UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| GARY REINBOLD, | ) |
| | ) |
| Plaintiff, | ) |
| v. | ) Case No. 4:21-cv-01154-SEP |
| | ) |
| AGCO CORPORATION, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM AND ORDER

Before the Court is Defendant AGCO Corporation's Motion for Summary Judgment, Doc. [36]. For the reasons set forth below, Defendant's motion is granted in part.

### FACTS AND BACKGROUND[1]

Plaintiff Gary Reinbold bought a Massey-Ferguson MF4710 tractor on October 30, 2020. Doc. [50] ¶ 1. The tractor was manufactured by Defendant AGCO, but sold by Plaintiff's local Massey-Ferguson dealer, Vahrenberg Implement, Inc. *Id.* Plaintiff planned to use the tractor on his property for things like baling hay, feeding cows, and cleaning snow in the winter. *Id.* ¶ 21. But about a week after the purchase, Plaintiff started having problems with the tractor. *Id.* ¶ 22. The tractor was covered by a warranty, so Plaintiff brought the tractor back to the dealer for repairs. Doc. [50-4] at 97. For roughly the next eight months, Plaintiff continued to have problems with the tractor, and he brought it back to the dealer for multiple repairs. *Id.* at 100-33. On August 24, 2021, Plaintiff brought this suit claiming that the tractor was a "lemon" under Missouri's Farm Machinery Lemon Law, Mo. Rev. Stat. § 407.585-592, and that Defendant breached the tractor's warranties. *See* Doc. [2].

### I. AGCO's Limited Warranty

Defendant warrants "its new equipment to be free of defects in material and workmanship at time of delivery to the first retail purchaser, renter, or lessee." Doc. [50-1] at 1. The limited warranty document covers a variety of Defendant's products, including tractors, implements, hay equipment, and harvest equipment. *Id.* For each type of equipment, the

---

[1] The facts are drawn from Defendant's Statement of Uncontroverted Material Facts, Doc. [36-2], and Plaintiff's Response to Defendant's Statement of Uncontroverted Material Facts and Additional Statement of Material Disputed Facts, Doc. [50].

document sets the terms and conditions of the warranty. Plaintiff's tractor, as a "4700 series" model, is covered for 24 months or 2000 hours, whichever comes first. Footnote four of the warranty clarifies that:

> In addition to standard warranty, the company will repair or replace, at its option, without charge for parts or labor, during normal working hours, any defective engine, transmission, drive axle casting, and/or components enclosed within these castings for an additional (12) month period provided the tractor has not been used for more than 2000 hours, whichever comes first.

*Id*. Page two of the warranty contains more terms and conditions. The warranty does not cover "conditions resulting from misuse, natural calamities, use of non-AGCO parts, negligence, alteration, accident, use of unapproved attachments, usage which is contrary to the intended purposes, or conditions caused by failure to perform required maintenance" or "[r]eplacement of Wear or Maintenance items (unless defective)." *Id.* at 2. All services performed under the warranty "must be performed by an authorized AGCO Dealer," and it is the "responsibility of the Owner to transport the equipment or parts to the service shop of an authorized AGCO Dealer." *Id*. The document also disclaims all other express or implied warranties and explains that "[c]orrection of defects, in the manner and for applicable period of time provided [in the warranty], shall constitute fulfillment of all responsibilities of AGCO to the Owner." *Id.*

## II.   Tractor Repairs

Pursuant to the terms of the warranty, Plaintiff brought the tractor back to the dealer for repairs. The parties disagree about the number and relevance of those repairs. Defendant describes four relevant problems with the tractor, Doc. [36-2] ¶ 23, while Plaintiff claims that there were eight repair attempts, Doc. [50] ¶ 23. To avoid confusion, the Court will describe the repair history by reference to the repair and warranty documents in the record.

> 1. On November 9, 2020, the tractor's instrument panel went blank, and the engine went to idle. On November 13, the dealer secured a loose electrical panel harness in the dashboard. *See* Doc. [50-6].
>
> 2. On November 13, 2020, the tractor cab's heater control was non-operational. The same day, the dealer secured a loose cable. *See* Doc. [50-7].
>
> 3. On December 28, 2020, the hydraulic lift on the tractor failed. On December 29, the dealer diagnosed the problem as a leaking O-ring and replaced the O-rings and lost hydraulic oil. *See* Doc. [50-8].
>
> 4. On December 28, 2020, the tractor had a problem with a loose throttle not staying in place. On December 29, the dealer diagnosed the problem as an unsecured lock nut and repaired the problem. *See* Doc. [50-9].

5. On January 22, 2021, Plaintiff noticed the tractor was leaking oil and the tractor lost steering control. On January 25, the dealer diagnosed the problem as a burst hydraulic oil cooler hose. The dealer replaced the hose and washed the leaked oil out of the tractor. *See* Doc. [50-10].

6. On April 29, 2021, the tractor experienced an engine derating problem causing impaired functionality. On May 5, the dealer diagnosed a problem with the diesel exhaust fluid (DEF) sensor and replaced the sensor. *See* Doc. [50-11].

7. On June 17, 2021, the tractor again experienced engine derating causing impaired functionality. On June 24, the dealer diagnosed the same DEF sensor problem and again replaced the sensor. *See* Doc. [50-12].

Plaintiff alleges that the engine derating issue continued after the June 24th repair, while Defendant claims the problem was fixed. Doc. [50] ¶ 38. But the June 24, 2021, repair marked the last time Plaintiff brought the tractor to one of Defendant's dealers before filing this suit on August 24, 2021. On October 1, 2022, Plaintiff brought the tractor to a different dealership, Shuck Implements Company in Lawrence, Kansas, for another repair. Doc. [50] ¶ 45 (Statement of Additional Material Facts). The parties have not provided warranty records for that repair like they did for the others, but Plaintiff claims the repair was related to ongoing problems with the tractor's engine. *Id.* ¶ 48 (Statement of Additional Material Facts).

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 56, a court must grant summary judgment if it finds, based on the factual record, that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (quoting Fed. R. Civ. P. 56). Material facts are those that "might affect the outcome of the suit under the governing law," and there is a genuine dispute where "a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The moving party bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp.*, 477 U.S. at 323 (quotation marks omitted). The burden then shifts to the non-movant to "present specific evidence, beyond 'mere denials or allegations [that] . . . raise a genuine issue for trial.'" *Farver v. McCarthy*, 931 F.3d 808, 811 (8th Cir. 2019) (alteration in original) (quoting *Wingate v. Gage*

3

*Cnty. Sch. Dist.*, 528 F.3d 1074, 1079 (8th Cir. 2008)). "A party asserting that a fact . . . is genuinely disputed must support the assertion by:  (A) citing to particular parts of materials in the record . . . ; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).  The evidence must be viewed "in the light most favorable to, and making all reasonable inferences for, the nonmoving party." *Carmody v. Kansas City Bd. of Police Comm'rs*, 713 F.3d 401, 404 (8th Cir. 2013).  But the "nonmovant 'must do more than simply show that there is some metaphysical doubt as to the material facts,' and must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)).

## DISCUSSION

Defendant moves for summary judgment on both of Plaintiff's claims.  For Count I, Plaintiff's claim under Missouri's Farm Machinery Lemon Law, Defendant argues that summary judgment is appropriate because (1) Plaintiff failed to satisfy the statute's notice requirement, (2) the tractor's problems do not "substantially impair" Plaintiff's use of the tractor, and (3) Plaintiff did not allow Defendant a reasonable opportunity to repair the tractor.  For Count II, which alleges violations of the Missouri Uniform Commercial Code, Defendant argues that (1) Plaintiff cannot establish any element of the express warranty claim and (2) Defendant validly disclaimed all implied warranties.  Genuine issues of material fact preclude summary judgment on Plaintiff's express warranty claim.  As to the rest of Plaintiff's claims, Defendant is entitled to summary judgment.

**I.     Count I:  Violation of the Missouri Farm Machinery Lemon Law**

Defendant argues that Plaintiff's Farm Machinery Lemon Law claim is a nonstarter because Plaintiff never provided the required pre-suit notice.  *See* Doc. [36-1] at 4.  Plaintiff responds that he did provide the required notice through the tractor dealer, and that even if that notice was insufficient, he was absolved of the statute's notice requirement by Defendant's failure to fulfill its duty to inform him about consumer complaint remedies.  Doc. [49] 3-8.  As both parties acknowledge, there is a dearth of case law interpreting the Farm Machinery Lemon Law's notice provision.  But under the most relevant precedent identified by the Court, *Stewart*

*v. Sieben, Inc.*, 783 S.W.2d 432 (Mo. Ct. App. 1989), Plaintiff failed to provide adequate notice and summary judgment is appropriate.

>Section 407.590.1 of the Farm Machinery Lemon Law provides:
>
>The manufacturer shall provide information for consumer complaint remedies with each new farm machinery. It shall be the responsibility of the consumer, or his representative, prior to availing himself of the provisions of sections 407.585 to 407.592, to give written notification to the manufacturer of the need for the repair of the nonconformity, in order to allow the manufacturer an opportunity to cure the alleged defect.

The parties disagree about the meaning of both sentences. Plaintiff argues that the statute's requirement that the "manufacturer shall provide information for consumer complaint remedies" creates a predicate duty, and that Defendant's failure to provide the consumer complaint information "relieved Plaintiff of any purported ensuing duty of providing notice." Doc. [49] at 5. The statute does not define "consumer complaint remedies," and no Missouri state court has considered its meaning. Defendant maintains that the information provided by the dealer about the warranty satisfies the requirement. Doc. [56] at 2-3. Defendant's limited warranty document informs customers that "[t]o be covered by Warranty, service must be performed by an authorized AGCO Dealer. It is recommended that you obtain warranty service from the Dealer who sold you the equipment because of that Dealer's continued interest in you as a valued customer" and provides AGCO's mailing address. Doc. [50-1] at 2. Plaintiff also signed the "AGCO Customer Orientation Form," including an acknowledgement that he completed an "in depth review of the warranty terms and conditions for base machine and attachments" and a review of "processes and obligations for standard Warranty work completion." Doc. [36-3] at 72.

Plaintiff counters that "consumer complaint remedies" are something different than the information he received from the dealer. Under Plaintiff's interpretation, a consumer is obligated to provide only "notice of a complaint in accordance with the manufacturer's complaint process that, by statute, the manufacturer 'shall provide.'" Doc. [49] at 5 (quoting Mo. Rev. Stat. § 407.590.1). Plaintiff compares Missouri's Farm Machinery Lemon Law to South Carolina's comparable statute, which requires a consumer to give written notification to the manufacturer "if the manufacturer has clearly and prominently informed the consumer of the requirement of written notification to the manufacturer at the time of sale." S.C. Code Ann. § 56-28-50(B). Missouri's law does not include a comparable clause. Missouri requires a

5

manufacturer to provide "information for consumer complaint remedies"; it does not specify that the manufacturer must inform the consumer of that particular statute's written notification requirement.  Nor does the Missouri statute explicitly make the consumer's obligation to provide written notice dependent on the manufacturer's provision of any particular information.  Plaintiff's argument is that both of those features of South Carolina's law are implicit in Missouri's.  The Court disagrees.

"The primary goal of statutory interpretation is to give effect to legislative intent, which is most clearly evidenced by the plain text of the statute." *State v. Kanatzar*, 543 S.W.3d 582, 585 (Mo. 2018).  The text of Missouri's Farm Machinery Lemon Law states:  "The manufacturer shall provide information for consumer complaint remedies with each new farm machinery." Mo. Rev. Stat. § 407.590.  The law defines "consumer" as

> the purchaser, other than for the purposes of resale, of new farm machinery, primarily used for agricultural purposes, and any person to whom such new farm machinery is transferred for the same purposes during the duration of an express warranty applicable to such new farm machinery, and any other person entitled by the terms of such warranty to enforce the obligations of the warranty.

Neither the Farm Machinery Lemon Law nor any of Missouri's other lemon laws defines "complaint" or "remedy."  "When the legislature does not provide the definition of a disputed term, a court must glean the plain and ordinary meaning of the undefined term from a dictionary definition existing at the time of enactment."  *Hoag v. McBride & Son Inv. Co.*, 967 S.W.2d 157, 169 (Mo. Ct. App. 1998) (citing *Asbury v. Lombardi*, 846 S.W.2d 196, 201 (Mo. 1993)).

Dictionaries from the time period of the Farm Machinery Lemon Law's enactment defined "complaint" as an "[o]utcry against or because of injury; representation of wrong suffered; utterance of grievance" or "[a]n utterance or statement of grievance or injustice suffered." 3 Oxford English Dictionary 608 (2d ed. 1989); *see also* Random House Dictionary of the English Language 418 (2d ed. 1987) ("[A]n expression of discontent, regret, pain, censure, resentment, or grief; lament; faultfinding.").  "Remedy" was defined as "something that corrects or removes an evil of any kind," or "legal redress; the legal means of enforcing a right or redressing a wrong."  Random House Dictionary of the English Language 1629 (2d ed. 1987); *see also Remedy*, Black's Law Dictionary (5th ed. 1979) ("The means by which a right is enforced or the violation of a right is prevented, redressed, or compensated. . . .  The rights given to a party by law or contract which that party may exercise upon a default by the other

contracting party, or upon the commission of a wrong (a tort) by another party."). Those definitions of "remedy" are consistent with the definition used in other locations of Title XXVI of the Missouri Revised Statutes. *See* Mo. Rev. Stat. 400.1-201(b)(32) ("'Remedy' means any remedial right to which an aggrieved party is entitled with or without resort to a tribunal.")

Using the meanings of its terms as they were understood at the time of its enactment, the Court understands § 407.590 to require a manufacturer to provide information about the means by which a purchaser of new farm machinery with a grievance about the machinery can enforce rights or redress wrongs, including rights under law and contract. There is no genuine dispute of material fact as to whether Defendant complied with the statute, thus understood. The warranty document and AGCO Customer Orientation Form inform Plaintiff how to enforce his contractual rights under the warranty and redress grievances with the tractor. Missouri's Farm Machinery Lemon Law itself provides a consumer complaint remedy, but not the only one; Defendant's warranty also fits within the plain meaning of the phrase. The Missouri legislature elected not to require a manufacturer to "provide information for *all* consumer complaint remedies" or "for consumer complaint remedies *under this statute*," as the statutes of South Carolina and other states show that it easily could have.[2] Thus, applying the plain statutory text to the undisputed facts, the Court finds that Defendant "provide[d] information for consumer complaint remedies," as required by § 407.590.

Even if Defendant had failed to do so, though, Plaintiff's second premise—that such failure excuses its own failure to provide written notice—also misunderstands the statutory text. Plaintiff characterizes Defendant's duty as "predicate" and a "prerequisite" to Plaintiff's duty to provide written notice, but the statute itself does not make either duty conditional on the other. Plaintiff literally alters the statute's text to support his argument: "It shall [then] be the responsibility of the consumer . . . ." Doc. [49] at 4 (alteration in original) (quoting Mo. Rev. Stat. § 407.590). That maneuver is not available to the Court. "[W]hether liberally or strictly construed, '[c]ourts cannot add words to a statute under the auspice of statutory construction.'" *Peters v. Wady Indus., Inc.*, 489 S.W.3d 784, 792 n.6 (Mo. 2016) (second alteration in original)

---

[2] *See, e.g.*, Md. Code Ann., Commercial Law § 14-1502(b)(1) ("Notice of *this procedure* shall be conspicuously disclosed to the consumer in writing at the time of sale or delivery of the motor vehicle."); N.C. Gen. Stat. Ann. § 20-351.5 ("The manufacturer must clearly and conspicuously disclose to the consumer in the warranty or owners manual *that written notification of a nonconformity is required* . . . .") (emphasis added).

(quoting *Sw. Bell Yellow Pages, Inc. v. Dir. of Revenue*, 94 S.W.3d 388, 390 (Mo. 2002)). Plaintiff argues that "use of the word 'shall' connotes a mandatory duty." Doc. [49] at 4 (citing *Bauer v. Transitional Sch. Dist. of City of St. Louis*, 111 S.W.3d 405, 408 (Mo. 2003)). But the legislature uses the same word for Plaintiff's duty to provide written notice, suggesting that it is equally mandatory, and there is nothing in the statute suggesting that it is conditional or subordinate. Plaintiff points to no case in which a court has found such dependence in a similarly worded statute.[3] As neither the text nor precedent supports finding that a consumer's obligation to provide notice is dependent on whether or what a manufacturer discloses, the Court declines to adopt that interpretation of the Farm Machinery Lemon Law.

Plaintiff also argues that, in fact, he complied with the statute's notice requirement. The statute allows notice to come from "the consumer, *or his representative*," Mo. Rev. Stat. § 407.590 (emphasis added), and Plaintiff claims that he "complied with the notice requirements by having his local authorized dealer provide the requisite notice." Doc. [49] at 6. After Plaintiff brought the tractor to the dealership for repairs, the dealer "on behalf of Plaintiff, submitted written notification of the tractor's nonconformities to Defendant through its software program." *Id.* at 7. Defendant counters that there is no evidence that the dealer was acting as Plaintiff's representative or agent. Doc. [56] at 4.

An agency relationship is created by "the manifestation of consent by an agent to a principal that the agent will act on the principal's behalf and subject to his control." *Bach v. Winfield-Foley Fire Prot. Dist.*, 257 S.W.3d 605, 608 (Mo. 2008) *(citing State ex rel. Ford*

---

[3] The Court's own research uncovered cases finding such a dependency only in states where a relationship between the two duties is explicit in the statutory text. For example, Maryland's automobile lemon law provides: "Notice of *this procedure* shall be conspicuously disclosed to the consumer in writing at the time of sale or delivery of the motor vehicle." Md. Code Ann., Commercial Law § 14-1502(b)(1) (emphasis added). In *General Motors Corp. v. Schmitz*, 764 A.2d 838 (Md. App. Ct. 2001), the Appellate Court of Maryland held that "Petitioners are not entitled to rely on the written notice requirement of § 14-1502(b)(1) as a condition precedent to bringing suit since they failed to disclose the notice requirement conspicuously to Respondent at the time of the vehicle's sale." Similarly, North Carolina's statute says: "The manufacturer must clearly and conspicuously disclose to the consumer in the warranty or owners manual that written notification of a nonconformity is required . . . ." N.C. Gen. Stat. Ann. § 20-351.5. The Court of Appeals of North Carolina found that a "manufacturer's deficient disclosure relieved [a] plaintiff from the written notice requirement." *Anders v. Hyundai Motor Am. Corp.*, 407 S.E.2d 618, 622 (N.C. Ct. App. 1991). As noted above, Missouri's Farm Machinery Lemon Law does not require disclosure of "this procedure" or "that written notification of a nonconformity is required"; it requires only that the manufacturer disclose "information for consumer complaint remedies," without specifying anything about the content of that disclosure.

*Motor Co. v. Bacon*, 63 S.W.3d 641, 642 (Mo. 2002); Restatement (Second) of Agency § 1 (Am. L. Inst. 1958)). "Neither a contract nor an express appointment and acceptance is necessary, but consent may be manifested and the relationship may be created by words and conduct." *Bach*, 257 S.W.3d at 608 (citing *Groh v. Shelton*, 428 S.W.2d 911, 916 (Mo. Ct. App. 1968)). Even under that flexible standard for creating an agency relationship, there is no evidence that the dealer was acting as Plaintiff's agent. Plaintiff cites plenty of evidence to demonstrate that Defendant was notified of the repairs by the dealer. *See* Doc. [49] at 7; Docs. [50-6]-[50-14]. But there is no evidence that Plaintiff exercised any *control* over the dealer when the dealer submitted the records. The dealer submitted the information to Defendant under the agreement that Defendant has with its dealers to conduct warranty repairs. *See* Doc. [50-17] at 23. Plaintiff points to no evidence that he asked the dealer to submit the information to Defendant or that he even knew that the dealer was using a software program to submit the warranty claims. Without *any* evidence of an agency relationship—even "words and conduct" that may have manifested or created such a relationship—a reasonable jury could not find that the dealer was acting as Plaintiff's agent.[4]

Lacking such evidence, Plaintiff's argument that notice to the dealer was sufficient appears to be foreclosed by the Missouri Court of Appeals' decision in *Stewart v. Sieben, Inc.*, 783 S.W.2d 432 (Mo. Ct. App. 1989). *Stewart* involved a claim under Missouri's Automobile Lemon Law. Mo. Rev. Stat. §§ 407.560-.579. The Automobile Lemon Law's notice requirement is identical to the Farm Machinery Lemon Law's. Ms. Stewart bought a Mercedes Benz from Sieben, a car dealer. After she started having problems with the car, she notified the dealer—not the manufacturer—about the problem. 783 S.W.2d at 434. The Missouri Court of Appeals held that Stewart "did not comply with the Lemon Law" because she "simply failed to

---

[4] Missouri's Farm Machinery Lemon Law requires that the "consumer, or his representative" provide written notice of the need for a repair. Mo. Rev. Stat. § 407.590. The statute does not define a "representative," and it is possible that a consumer's representative is different than a consumer's agent. *Compare Representative*, Black's Law Dictionary (11th ed. 2019) ("Someone who stands for or acts on behalf of another."), *with Agent*, Black's Law Dictionary (11th ed. 2019) ("Someone who is authorized to act for or in place of another; a representative."). But the parties do not discuss, and the Court does decide, whether the dealer could be Plaintiff's representative without also being an agent. Plaintiff points to no evidence that the dealer was acting as his "representative" or, in Plaintiff's terms, "on his behalf," either. As it is Plaintiff's burden to "present specific evidence, beyond 'mere denials or allegations [that] . . . raise a genuine issue for trial,'" he has failed to meet that burden. *Farver*, 931 F.3d at 811 (alteration in original) (quoting *Wingate*, 528 F.3d at 1079).

notify the proper party in order to avail herself of the provisions of the Lemon law." *Id.* Where, as here, "the Supreme Court of Missouri has not addressed an issue, we must predict how the court would rule, and we follow decisions from the intermediate state courts when they are the best evidence of Missouri law." *Davis v. Buchanan Cnty.*, 5 F.4th 907, 909 (8th Cir. 2021). *Stewart* is the best indication of how Missouri courts would interpret the Automobile Lemon Law's notice requirement, and there is no reason to expect that Missouri courts would interpret identical provisions in two lemon laws differently. Following *Stewart*, Plaintiff failed to provide written notice to Defendant of the need for repairs as required by Missouri's Farm Machinery Lemon Law. Notice to the dealer alone is not enough. Therefore, Defendant is entitled to summary judgment as to Count I of the Complaint.

**II.      Count II:  Violations of the Missouri Uniform Commercial Code**

### A. Genuine issues of material fact preclude summary judgment on Plaintiff's breach of express warranty claim.

The elements of a breach of express warranty claim are:

(1) the defendant sold goods to the plaintiff; (2) the seller made a statement of fact about the kind or quality of those goods; (3) the statement of fact was a material factor inducing the buyer to purchase the goods; (4) the goods did not conform to that statement of fact; (5) the nonconformity injured the buyer; and (6) the buyer notified the seller of the nonconformity in a timely fashion.

*Hope v. Nissan N. Am., Inc.*, 353 S.W.3d 68, 85 (Mo. Ct. App. 2011) (quoting *Renaissance Leasing, L.L.C. v. Vermeer Mfg. Co.*, 322 S.W.3d 112, 122 (Mo. 2010). Defendant argues that Plaintiff cannot establish any of the elements of his claim.

### *1. Plaintiff has produced sufficient evidence of elements 1-3 to go to a jury.*

Defendant argues that Plaintiff cannot establish elements one through three of his breach of express warranty claim for three reasons: (1) Defendant did not sell the tractor to Plaintiff; a dealer did; (2) because Defendant didn't sell Plaintiff the tractor, it never made any statements of fact about the tractor; and (3) because Defendant never made any statements about the tractor, nothing Defendant said could be a material factor inducing Plaintiff to purchase the tractor. Doc. [36-1] at 9. Defendant's arguments are undermined by Missouri case law, Defendant's own warranty document, and Defendant's Statement of Uncontroverted Material Facts, Doc. [36-2].

The only authority Defendant cites to support its position is the UCC's definition of a seller as "a person who sells or contracts to sell goods." Mo. Rev. Stat. § 400.2-103. But "Missouri courts have long held that the warranty provisions of the Missouri Uniform

10

Commercial Code apply to remote manufacturers because privity is not required." Doc. [49] at 15. Privity "is not required to recover for injuries caused by breach of an express warranty" where the documents creating the warranty are "obviously directed toward prospective purchasers" and the "defendant should have known that they might rely on it." *Whitman v. Consol. Aluminum Corp.*, 637 S.W.2d 405, 407 (Mo. Ct. App. 1982).

Defendant admits that "[u]pon purchase of the Tractor, Plaintiff received an AGCO 'Limited Warranty, Terms and Conditions,'" Doc. [36-2] ¶ 8, and that the "Limited Warranty covers the Tractor for twenty-four months or two thousand hours, whichever comes first." *Id.* ¶ 12. The terms of the express warranty state that "*AGCO Corporation warrants* its new equipment to be free of defects in material and workmanship at time of delivery *to the first retail purchaser*, renter, or lessee." Doc. [50-1] at 1 (emphasis added). Defendant's argument is thus inconsistent with its own admissions and would render its express warranty—and the express warranty of any of Defendant's tractors sold by a dealer—unenforceable. A reasonable jury could find that Defendant made statements of fact about the kind or quality of the tractor in its warranty document, Doc. [50-1], and that the statements of fact were a material factor inducing the Plaintiff to purchase the tractor, Doc. [50] ¶ 36 (Statement of Additional Material Facts); Doc. [50-19] ¶¶ 2-3. Therefore, Defendant's bid for summary judgment on the first three elements of the express warranty claim fails.

2. ***Whether the tractor conformed to the express warranty is genuinely disputed.***

Defendant also argues that "Plaintiff cannot show that the Tractor did not conform to AGCO's Limited Warranty" because "the evidence establishes that AGCO fulfilled its obligations under the Limited Warranty that the Tractor would be free of defects in material and workmanship at time of first delivery to Plaintiff" and "the Dealer repaired the Tractor free of charge to Plaintiff under the AGCO Limited Warranty." Doc. [36-1] at 9-10. But genuine issues of material fact remain about whether the repairs that were performed satisfied Defendant's obligations under the warranty. *See, e.g.*, Docs. [36-3] at 23-24, 29; Doc. [50-15]. In October 2022—within the two-year warranty period but outside the one-year Lemon Law period—Plaintiff brought the tractor to a different dealership, Shuck Implement Company in Lawrence, Kansas, due to more engine problems. *See* Doc. [50] ¶¶ 45-47 (Statement of Additional Material Facts). Plaintiff claims that the tractor "still exhibits the same engine nonconformities even after Plaintiff retrieved it from Shuck Implement." *Id.* ¶ 48. Defendant admits that Shuck completed

11

that repair but denies that any residual problem after the warranty repairs qualifies as a nonconformity. Doc. [59] ¶¶ 45-48. Plaintiff points to enough evidence to show a genuine dispute of material fact. The Court cannot say that Defendant conformed the tractor to the warranty without "weigh[ing] the evidence" to "determine the truth of the matter." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Therefore, summary judgment is not appropriate.

### 3. There is a genuine dispute as to whether Plaintiff was injured by the alleged nonconformities.

Defendant claims that Plaintiff cannot satisfy the fifth element of his breach of express warranty claim because "Plaintiff cites to nothing in the record establishing how any warranty nonconformity caused him injury." Doc. [56] at 17. Plaintiff argues that Missouri law allows him to offer testimony about the value of the tractor. *See DeLong v. Hilltop Lincoln-Mercury, Inc.*, 812 S.W.2d 834, 841 (Mo. Ct. App. 1991) ("An owner of property may testify as to its value."); *Scott v. Blue Springs Ford Sales, Inc.*, 215 S.W.3d 145, 182 (Mo. Ct. App. 2006), *overruled by on other grounds by Badahman v. Catering St. Louis*, 395 S.W.3d 29 (Mo. 2013) (car owner was "qualified to give an estimate of its fair market value"). Defendant provides no case law to rebut that argument. *See* Doc. [56] at 17-18. Plaintiff states in his affidavit that he "would not have agreed to purchase the Tractor if [he] had known, on October 30, 2020, what [he] know[s] now about the Tractor," Doc. [50-19] ¶ 10, and he may provide additional testimony at trial about "the value of the goods accepted and the value they would have had if they had been as warranted." Mo. Rev. Stat. § 400.2-714(2).[5] Thus, Defendant has not shown an absence of genuine dispute as to the fifth element of the express warranty claim.

### 4. Plaintiff provided adequate pre-suit notice.

Section 400.2-607(3)(a) of the Missouri Uniform Commercial Code requires a buyer, "within a reasonable time after he discovers or should have discovered any breach," to "notify the seller of [the] breach or be barred from any remedy." Defendant argues that Plaintiff "did not notify either the Dealer, or AGCO, of any purported breach of warranty, prior to filing its breach of warranty claim." Doc. [36-1] at 8. Plaintiff responds that he satisfied the notice requirements

---

[5] Defendant makes a passing argument in a footnote that "the so-called 'economic loss doctrine' bars recovery of purely pecuniary losses in tort where the injury results from a breach of a contractual duty." Doc. [36-1] at 10 n.7 (some internal quotation marks omitted) (quoting *Tuter v. Freud Am., Inc.*, 2022 WL 4636225, at *10 (W.D. Mo. Sept. 30, 2022)). Plaintiff is not seeking to recover in a tort claim, so the doctrine does not apply.

by bringing the tractor to the dealer and describing the problems.  Doc. [49] at 20.  Because of the UCC's broad notice provisions, Plaintiff has the better of the argument.

Under the Missouri UCC, a "person has 'notice' of a fact if the person:  (1) has actual knowledge of it; (2) has received a notice or notification of it; or (3) from all the facts and circumstances known to the person at the time in question, has reason to know that it exists." Mo. Rev. Stat. § 400.1-202(a).  "A person 'notifies' or 'gives' a notice or notification to another person by taking such steps as may be reasonably required to inform the other person in ordinary course, whether or not the other person actually comes to know of it."  *Id.* § 400.1-202)(d).  And a person receives notice when:  "(1) it comes to that person's attention; or (2) it is duly delivered in a form reasonable under the circumstances at the place of business through which the contract was made or at another location held out by that person as the place for receipt of such communications."  *Id.*

The Supreme Court of Missouri has held that the "notice contemplated by the U.C.C. does not require any particular formality or detail as to the nature of the buyer's complaint.  'The content of the notification need merely be sufficient to let the seller know that the transaction is still troublesome and must be watched.'"  *Kansas City v. Keene Corp.*, 855 S.W.2d 360, 369 (Mo. 1993) (quoting U.C.C. § 2–607 Comment 4 (1989)).  And the "buyer is only under a duty to notify the immediate seller, not the manufacturer."  *Id.* (citing *Ragland Mills, Inc. v. General Motors Corp.*, 763 S.W.2d 357, 361 (Mo. Ct. App. 1989)); *see also Delgado v. Peterbilt Motors Co.*, 2022 WL 4378819, at *3 (E.D. Mo. Sept. 22, 2022) ("[T]his Court recently ruled that a buyer is only under a duty to notify the immediate seller, not the manufacturer.").

Defendant had enough notice to know that the tractor was "troublesome and must be watched."  Plaintiff's communications with the dealer and the dealer's transmission of that information to Defendant through Defendant's warranty and customer service systems gave Defendant actual knowledge of the problems with Plaintiff's tractor.  Mo. Rev. Stat. § 400.1-202(a).  Even notice to the dealer alone would have been "reasonable under the circumstances" because it was "at the place of business through which the contract was made or at another location held out by that person as the place for receipt of such communications."  *Id.* § 400.1-202)(d).  Defendant's warranty instructs buyers to "obtain warranty service from the Dealer who

13

sold you the equipment."  Doc. [50-1] at 2.  It was therefore reasonable for Plaintiff to reach out to the dealer when he started having problems with the tractor.[6]

### B. Summary judgment is warranted on Plaintiff's implied warranty claim.

Defendant argues that Plaintiff's breach of implied warranty claim fails as a matter of law because "AGCO's Limited Warranty validly disclaimed the implied warranty of merchantability and the implied warranty of fitness, as permitted by Section 400.2-316(2)."  Doc. [36-1] at 11.  Plaintiff responds that the disclaimer is not valid because it is not "conspicuous" as defined by § 400.2-316(2) of the Missouri UCC.  Doc. [49] at 25.  The Court agrees with Defendant.

"[T]o exclude or modify the implied warranty of merchantability or any part of it the language must mention merchantability and in case of a writing must be conspicuous, and to exclude or modify any implied warranty of fitness the exclusion must be by a writing and conspicuous."  Mo. Rev. Stat. § 400.2-316(2)  "Whether a term is 'conspicuous' or not is a decision for the court," *Id*. § 400.1-201(b)(10), but a term is conspicuous under the UCC when

> (A) a heading in capitals equal to or greater in size than the surrounding text, or in contrasting type, font, or color to the surrounding text of the same or lesser size; and
>
> (B) language in the body of a record or display in larger type than the surrounding text, or in contrasting type, font, or color to the surrounding text of the same size,

---

[6] None of the cases cited by Defendant persuades the Court otherwise.  In *Kansas City v. Keene Corp.*, the Missouri Supreme Court found that the manufacturer of a fireproof spray used in the Kansas City Airport (KCI) had notice of problems with the spray after the defendant's sales representative was notified by the company that "sold the product to the city and installed the materials at KCI."  855 S.W.2d 360, 369 (Mo. 1993).  That "notice was sufficient to make [the defendant] aware that the materials were 'troublesome and must be watched.'"  *Id.*  Plaintiff's notice to the dealer is equivalent to the notice that Kansas City provided to the fireproof spray seller.  In *Ragland Mills, Inc. v. Gen. Motors Corp.*, the plaintiff's car was wrecked and taken to the dealership for repair, where the plaintiff "had a technical examination of the vehicle made on [the dealer's] premises."  763 S.W.2d 357, 361 (Mo. Ct. App. 1989).  The Missouri Court of Appeals held that "[s]uch evidence is sufficient to demonstrate notice to the immediate seller— [the dealer]—that the plaintiff claimed some sort of breach of warranty."  *Id.*  That notice to the immediate seller "inures to the benefit of the manufacturer and is sufficient to serve the policy of the notice requirement."  *Id.* (citing *Palmer v. A.H. Robins Co., Inc.*, 684 P.2d 187, 205-07 (Colo. 1984); *Firestone Tire and Rubber Co. v. Cannon*, 452 A.2d 192, 195 (Md. App. Ct. 1982)).  And the cases Defendant cites in footnote two are unpersuasive because they involve situations where (1) the plaintiff claimed the complaint itself was sufficient notice, *Budach v. NIBCO, Inc.*, 2015 WL 6870145, at *3 (W.D. Mo. Nov. 6, 2015), or (2) the plaintiff failed to allege pre-suit notice all together, *Guilford v. Bos. Sci. Corp.*, 2020 WL 1668279, at *4 (W.D. Mo. Apr. 3, 2020); *Ridings v. Maurice*, 2019 WL 4888910, at *12 (W.D. Mo. Aug. 12, 2019), *on reconsideration*, 2019 WL 8223599 (W.D. Mo. Oct. 20, 2019), or (3)  the breach of warranty claim was dismissed because the plaintiff's complaint failed to plead another element of the claim, *Gillan v. Wright Med. Tech. Inc.*, 396 F. Supp. 3d 844, 849 (E.D. Mo. 2019).

>or set off from surrounding text of the same size by symbols or other marks that call attention to the language.

*Id.*

Here is Defendant's warranty disclaimer:

**EXCLUSIVE EFFECT OF WARRANTY AND LIMITATION OF LIABILITY**
THIS WARRANTY IS IN LIEU OF ALL WARRANTIES OF MERCHANTABILITY, FITNESS FOR A PURPOSE OR OTHER REPRESENTATIONS, WARRANTIES OR CONDITIONS, EXPRESSED OR IMPLIED. The remedies of the Owner set forth herein are exclusive. The Company neither assumes nor authorizes any person to assume for it any other obligation or liability in connection with the sale of covered machines. Correction of defects, in the manner and for applicable period of time provided above, shall constitute fulfillment of all responsibilities of AGCO to the Owner, and AGCO shall not be liable for negligence under contract or in any manner with respect to such machines. IN NO EVENT SHALL THE OWNER BE ENTITLED TO RECOVER FOR INCIDENTAL, SPECIAL OR CONSEQUENTIAL DAMAGES SUCH AS BUT NOT LIMITED TO, LOSS OF CROPS, LOSS OF PROFITS OR REVENUE, OTHER COMMERCIAL LOSSES, INCONVENIENCE OR COST OF RENTAL OR REPLACEMENT EQUIPMENT.
Some States or Provinces do not permit limitations or exclusions of implied warranties or incidental or consequential damages, so the limitations or exclusions in this warranty may not apply.

Doc. [50-1] at 2. The heading is bold, i.e., in contrasting type, and in capitals equal in size to the surrounding text, and the language in the body is in all capitals, i.e., a contrasting type, to the surrounding text of the same size. Those characteristics are displayed so that "a reasonable person against which it is to operate ought to have noticed it." Mo. Rev. Stat. § 400.1-201(b)(10). Nothing about the rest of the document changes that conclusion. The disclaimer is not buried in a lengthy document. The warranty comprises only two pages, and the disclaimer appears toward the end of the second page. And although the headings of other paragraphs in the warranty are also in bold capitals, the disclaimer is the only paragraph that includes full sentences in all capitals. The disclaimer complies with the UCC's requirements.

Plaintiff argues that *Massey-Ferguson, Inc. v. Utley*, 439 S.W.2d 57, 60 (Ky. Ct. App. 1969), and *JAK Application, LLC v. AGCO Corp.*, 2019 WL 5800082, at *2 (E.D. Ark. June 19, 2019), demonstrate that the disclaimer is not conspicuous. Neither case is applicable. *Utley* applied a Kentucky statute from 1969, not the Missouri UCC. *See* 439 S.W.2d at 58-59 (applying Ky. Rev. Stat. Ann. § 355.1-201(10) (1969)). The court in *Utley* also found that the disclaimer was inconspicuous for different reasons. Unlike Defendant's disclaimer, which is in all capitals, the disclaimer in *Utley* was "in type of the same size and face as were the general contents of the contract." *Id.* at 59. The header of the disclaimer also read only "WARRANTY AND AGREEMENT," which did nothing to "suggest that an exclusion was being made; on the contrary, the words of the heading indicated a making of warranties rather than a disclaimer." *Id.* Defendant's header, "EXCLUSIVE EFFECT OF WARRANTY AND LIMITATION OF LIABILITY," signals that an exclusion is being made. Doc. [50-1] at 2.

*JAK* also involved a different standard than that of the Missouri UCC. The *JAK* court found the disclaimer insufficient because "it took the Court several minutes to locate the

15

exclusionary language when looking specifically for it." 2019 WL 5800082, at *2. The court did not discuss whether the disclaimer complied with the UCC's conspicuousness requirements.

Because Defendant's disclaimer of implied warranties is sufficiently conspicuous under Missouri law, Defendant is entitled to summary judgment as to Plaintiff's implied warranty claim.

## CONCLUSION

Genuine issues of material fact prevent summary judgment as to Plaintiff's breach of express warranty claim under Count II. As to all other claims, Defendant has shown that it is entitled to summary judgment.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant AGCO's Motion for Summary Judgment, Doc. [36], is **GRANTED IN PART** and **DENIED IN PART**. Summary judgment is **DENIED** as to Plaintiff's express warranty claim under Count II. The motion is otherwise **GRANTED**.

A separate Judgment shall accompany this Memorandum and Order.

Dated this 9th day of November, 2023.

_____
SARAH E. PITLYK
UNITED STATES DISTRICT JUDGE